# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Andrew J. Flosdorf,<br><br>       Plaintiff,<br><br>v.<br><br>Reliance Standard Life Insurance<br>Company,<br><br>       Defendant. | Case No. 22-cv-00091 (SRN/ECW)<br><br><br><br>**ORDER** |

Adam Hagedorn, Charles J. Lloyd, and Stephanie A. Christel, Livgard & Lloyd PLLP, P.O. Box 14906, Minneapolis, MN 55414, for Plaintiff.

Jake Elrich and Terrance J. Wagener, Messerli Kramer P.A., 100 South 5th Street, Suite 1400, Minneapolis, MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the parties' submissions following the Court's Order granting judgment on the pleadings to Plaintiff Andrew Flosdorf. (J. on the Pleadings Order [Doc. No. 32].) As part of that Order, the Court directed Mr. Flosdorf to submit a declaration of the total benefit award requested, along with the prejudgment interest, attorney's fees, and costs requested. (*Id.* at 67; Pl.'s Decl. [Doc. No. 33].) The Court permitted Defendant Reliance Standard Life Insurance Company ("Reliance Standard") to submit a response to Mr. Flosdorf's declaration. (Def.'s Resp. [Doc. No. 34].) Due to legal objections raised by Reliance Standard, the Court then allowed Mr. Flosdorf to file a short Reply. (June 6, 2022 Order [Doc. No. 35]; Pl.'s Reply [Doc. No. 34].)

## I.   Benefits Award

Mr. Flosdorf requests a total benefit award of $609,094.99, representing a monthly disability benefit of $6000 for the period of July 6, 2020, through December 11, 2036,[1] less his other income and benefits. (Pl.'s Decl. at 1–5.) Reliance Standard objects to this calculation as based on an improperly lengthy period. (Def.'s Resp. at 1.) It contends that because benefits payments end under multiple scenarios, the Court should only award benefits through September 20, 2021, and then remand the case to Reliance Standard for further determination of benefits eligibility under the "Any Occupation" standard. (*Id.* at 1–4.) Per its calculation, Mr. Flosdorf is entitled to an award of $29,088.88.

Mr. Flosdorf responds that Reliance Standard waived its ability to contest the award of future benefits by only addressing the issue in a footnote at the merits stage. (Pl.'s Reply at 1–2 (citing Def.'s Opp'n [Doc. No. 28] at 9–10 n.4).) He further argues that the Court already determined that he is disabled under the "Any Occupation" standard and that the Administrative Record supports this determination. (*Id.* at 4–5.)

As noted in the Order on the Pleadings, the LTD Policy defines "Totally Disabled" to mean: "that as a result of an Injury or Sickness: . . . during the Elimination Period and for the first 36 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation." (J. on the Pleadings Order at 4 (citing AR at 10).) The LTD Policy continues with a second definition of "Total Disability": "after

---

[1] The Court assumes that December 11, 2036 represents the date on which Mr. Flosdorf will turn 65 because that is the age at which benefits under the Policy terminate for someone whose disability began prior to age 61. (*See* AR at AR0007.)

a monthly benefit has been paid for 36 months, an insured cannot perform the material duties of Any Occupation." (AR at 10.) "Any Occupation" means "an occupation normally performed in the national economy for which an Insured is reasonably suited based upon his/her education, training, or experience." (*Id.* at 9.)

Regarding interpretation of the Order, contrary to Mr. Flosdorf's assertion, this Court did not decide that he is disabled from performing "Any Occupation." Indeed, the Court did not include the "Any Occupation" standard of Total Disability, or the definition of "Any Occupation," in its findings of fact. (*See* J. on the Pleadings Order at 3–38.) Throughout the Order, the Court focused on Mr. Flosdorf's responsibilities as a consultant and ultimately found "by a preponderance of the evidence that Mr. Flosdorf could not perform the material duties of *his occupation*." (*Id.* at 64 (emphasis added).) When understood in this context, the Court's use of the phrase "for all periods applied," (*id.* at 65), encompasses the two "periods" of decision—Mr. Flosdorf's initial claim and his appeal—that occurred during the 36-month "Regular Occupation" window. The Order on the Pleadings thus only addressed Mr. Flosdorf's "Total Disability" under the "Regular Occupation" standard.

In addition, the Court does not find that Reliance Standard waived its challenge to the award of future benefits under the "Any Occupation" standard. While Reliance Standard only addressed the "Any Occupation" standard in a footnote, the same is true of Mr. Flosdorf.[2] (*Compare* Pl.'s Mem. [Doc. No. 25] at 10 n. 5, *with* Def.'s Opp'n at 9–10

_____

[2] Mr. Flosdorf's passing references to his inability to perform "any occupation," (*see, e.g.*, Pl.'s Mem. at 4, 10, 12, 23), are insufficient to overcome his failure to support

n.4.) Both parties' briefing, and consequently the Court's Order, concentrated on Mr. Flosdorf's ability to perform his regular occupation. And for good reason: Reliance Standard made no determination under the "Any Occupation" standard in denying Mr. Flosdorf's claim. (*See* AR at 117–18, 128, 135 ("Mr. Flosdorf was capable of resuming the material duties of his Regular Occupation prior to the Elimination Period ending . . . Therefore he is not considered "*Totally Disabled*") (emphasis in original).)

Reliance Standard's process reflects the bifurcated definition of "Total Disability" in the LTD Policy, which counsels against the award of disability benefits through 2036. Although there is no Eighth Circuit precedent directly on point, the Court's decision in *Seman v. FMC Corp. Retirement Plan for Hourly Employees*, 334 F.3d 728 (8th Cir. 2003), provides helpful guidance. There, FMC denied Mr. Seman's claim for disability benefits on the basis that he had not proven total disability as defined by the plan. *Seman*, 334 F.3d at 731. Mr. Seman appealed, but FMC's review panel never acted on his appeal. *Id.* In the subsequent ERISA lawsuit, the district court found that FMC had not abused its discretion in denying Mr. Seman's claim. *Id.*

On appeal to the Eighth Circuit, Mr. Seman argued that the district court should have employed a de novo standard of review. *Id.* at 732–33. In determining the proper standard of judicial review, the Eighth Circuit held: "When a plan administrator fails to render any decision whatsoever on a participant's application for benefits, it leaves the

---

these references with any evidence from the Administrative Record discussing the duties of an occupation other than his own.

courts with nothing to review under any standard of review, so the matter must be sent back to the administrator for a decision." *Id.* at 733.

Despite the context of judicial review, the Seventh Circuit found this rule instructive when analyzing facts analogous to those here. *Pakovich v. Broadspire Servs., Inc.*, 535 F.3d 601, 605–07 (7th Cir. 2008). Like Mr. Flosdorf, the plan administrator in *Pakovich* denied the plaintiff's disability benefits claim under an "own occupation" standard. *Id.* at 603. When Ms. Pakovich sued under ERISA, the district court ruled in her favor, finding that she was qualified for benefits under that standard. *Id.* The court then went further, holding that the record did not support total disability under the plan's "any occupation" standard—even though the plan administrator never issued a decision under that standard. *Id.* Ms. Pakovich appealed this latter holding. *Id.*

The Seventh Circuit first held that the plan administrator was not required to issue a determination under the "own occupation" and "any occupation" standards simultaneously, which would be "impractical and redundant." *Id.* at 605. A determination under the second standard only became necessary after the district court ruled in Ms. Pakovich's favor under the first standard. *Id.* at 605–606. Second, at that point, the district court should have remanded the case to the plan administrator. *Id.* at 606–07. Relying on the *Seman* language quoted above, the Seventh Circuit reasoned that because the plan administrator had not issued a decision under the "any occupation" standard, the district court had "nothing to review" under that standard. *Id.* at 607 ("When the plan administrator has not issued a decision on a claim for benefits that is now before the courts, the matter must be sent back to the plan administrator to address the issue in the first instance.").

Likewise here, the Court had nothing to review under the "Any Occupation"

standard of the LTD Policy because Reliance Standard denied Mr. Flosdorf's claims under

the "Regular Occupation" standard. (AR at 135.) In fact, the 36-month "Regular

Occupation" period expired at the beginning of July 2023,[3] over a month *after* the Court

issued its Order on the Pleadings. The Court again emphasizes that the Administrative

Record does not contain any evidence from the "Any Occupation" period because it was

never reached before this lawsuit began. Plan administrators typically conduct a vocational

assessment at the end of the "regular occupation" period to evaluate whether a claimant

truly cannot perform "any occupation." *See, e.g.*, *Sweno v. Liberty Life Assurance Co. of

Boston*, No. 02-cv-376 (JRT/FLN), 2003 WL 1572006, at *2, *5 (D. Minn. Mar. 10, 2003)

(discussing vocational analysis under "any occupation" standard); *Hopkins v. AT&T

Umbrella Benefit Plan No. 1*, No. 5:12-cv-00102 (NKL), 2013 WL 12144078, at *14

(W.D. Mo. June 4, 2013) (collecting cases holding that where the plan "defines eligibility

for benefits requiring that the claimant be unable to perform any occupations for which he

or she is suited by virtue of education or training, the plan administrator must conduct an

appropriate vocational evaluation in determining the claimant's eligibility under this

standard." (citation omitted)). Here, such an analysis is conspicuously absent from the

Administrative Record.

Under these circumstances, the Court finds the Seventh Circuit's interpretation of

*Seman* sound. *See also Martinez v. Standard Life Ins. Co.*, No. 20-10475, 2021 WL

_____

[3] The 90-day Elimination Period ended on July 3, 2020. (J. on the Pleadings Order at 4.) Adding 36 months, the "Regular Occupation" period ended in early July 2023.

4592430, at *4 (5th Cir. Oct. 5, 2021) (citing *Pakovich* and remanding to the plan administrator for an evaluation of the plaintiff's entitlement to any-occupation benefits after finding the plaintiff entitled to own-occupation benefits); *Barbu v. Life Ins. Co. of N. Am.*, 35 F. Supp. 3d 274, 296–98 (E.D.N.Y. 2014) (same). Consequently, the Court will remand this matter to Reliance Standard for a determination of Mr. Flosdorf's eligibility for benefits under the "Any Occupation" standard.[4]

Although remand is appropriate to determine future benefits, the Court will award Mr. Flosdorf past-due benefits through May 31, 2023, the date of the Court's Order. *See Kaminski v. UNUM Life Ins. Co. of Am.*, 517 F. Supp. 3d 825, 867 (D. Minn. 2021) (remanding to plan administrator for determination under "gainful occupation" standard but awarding retroactive benefits through the end of the "regular occupation" period). In contrast with the logical re-evaluation of disability at the end of the "Regular Occupation" period, the LTD Policy nowhere discusses continual re-evaluation of disability during that period. In other words, if Reliance Standard had approved Mr. Flosdorf's claim at the outset (or on appeal), it is reasonable to conclude that Mr. Flosdorf would have received benefits for the full 36 months. (*See* AR at 14 (authorizing Reliance Standard to examine claimants to determine existence of Total Disability "as often as it is reasonably required," but only "while a claim is *pending*") (emphasis added).) To conclude otherwise would be to reward

---

[4] The Court's decision to remand is further supported by Mr. Flosdorf's apparent recognition in his Complaint that even if granted benefits, those benefits could terminate if his disability ended. (Compl. [Doc. No. 1] at 7 (requesting payment of "all future long term disability benefits according to the *terms of the plan* until Mr. Flosdorf *is no longer disabled*") (emphasis added).) Such a change would necessarily involve Reliance Standard re-evaluating his Total Disability.

Reliance Standard for its error in denying Mr. Flosdorf's claim by allowing it another chance to adjudicate his disability under the "Regular Occupation" standard. Accordingly, the Court awards Mr. Flosdorf benefits through the date of the Order, for a total of $88,865.32.[5]

## II.     Prejudgment Interest

Mr. Flosdorf also seeks prejudgment interest. (Pl.'s Decl. at 5.) Interest is allowed on any money judgments recovered in district court and is calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961(a). While ERISA contains no express provision for prejudgment interest, "such an award is permitted under 29 U.S.C. § 1132(a)(3)(B) if a court finds it to be 'appropriate equitable relief.'" *Christoff v. Unum Life Ins. Co. of Am.*, No. 17-cv-3512 (DWF/KMM), 2019 WL 4757884, at *11 (citing *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1330 (8th Cir. 1995)). Interest awarded to ERISA litigants is assessed according to the rate of interest

---

[5] From August 2020 through May 2023, Mr. Flosdorf was owed $6,000 per month before deducting disability payments from Digineer and Social Security. (*See* Pl.'s Decl. ¶ 3–20; AR at 7 (describing method for calculating monthly benefit amount).) In July 2020, Mr. Flosdorf was entitled to twenty-nine days of benefits (beginning July 3) at $200 per day, for a total of $5,800. (Pl.'s Decl. ¶ 3.)

For each month, the Court subtracted the amount paid by Digineer and Social Security, if any, to reach the net benefit owed to Mr. Flosdorf. If the net benefit was less than $100, Mr. Flosdorf was entitled to the minimum monthly benefit of $100. (*See, e.g.*, *id.* ¶ 7; AR at 7.) For example, in December 2021, Mr. Flosdorf received $1,586.26 from Digineer and $2,711.90 from Social Security, so his net benefit owed is: $6,000 – $1,586.26 – $2,711.90 = $1,701.84. (Pl.'s Decl. ¶ 15.)

Adding together the net benefits owed from July 2020 through May 2023, Mr. Flosdorf is entitled to $88,865.32 before interest.

provided under 18 U.S.C. § 1961. *Id.* (citing *Mansker*, 54 F.3d at 1331). The Court finds

that an award of prejudgment interest is appropriate equitable relief here.

Both parties agree that the relevant weekly average 1-year constant maturity

Treasury yield is 4.91%. (Pl.'s Decl. at 5; Def.'s Resp. at 4.) Reliance Standard asserts that

Mr. Flosdorf has incorrectly calculated the interest; it contends that the proper method is

to calculate the interest "from the month each separate benefit payment became payable."

(Def.'s Resp. at 4.) However, neither party has provided the Court with a detailed interest

calculation. (*See* Pl.'s Decl.; Def.'s Resp.; Pl.'s Reply.)

Section 1961(b) requires interested to be "computed daily to the date of payment . .

. [and] compounded annually." 28 U.S.C. § 1961(b). Using the 4.91% interest rate agreed

to by the parties, the Court believes that the correct calculation yields a total accrued

interest of $6,030.61.[6] *See Lanpher v. Metro. Life Ins. Co.*, No. 12-cv-2561 (JRT/JSM),

2015 WL 4920042, at *4 (D. Minn. Aug. 18, 2015) (calculating interest based on the

statutory language and including a demonstrative spreadsheet). Should the parties disagree

---

[6] Interest accrued from the first day of the period in which the net benefit was owed until May 31, 2023, the date of judgment in this case. For example, interest accrued on the $4,157.07 owed to Mr. Flosdorf in July 2020 from July 3, 2020, until May 31, 2023, a duration of approximately 2.91 years. (*See* Pl.'s Decl. ¶ 3.) Interest accrued on the $1,701.84 owed to Mr. Flosdorf in December 2021 from December 1, 2021, until May 31, 2023, or 1.50 years. (*Id.* ¶ 15.)

For each monthly net benefit, the Court calculated interest at 4.91% compounded annually. For example, the December 2021 net benefit of $1,701.84 accrued $126.51 over the 1.50 years between December 1, 2021, and the date of judgment. Summing the interest accrued from July 2020 through May 2023, Mr. Flosdorf is entitled to $6,030.61 in interest.

Therefore, Mr. Flosdorf is entitled to $88,865.32 in net benefits plus $6,030.61 in interest, for a total of $94,895.93.

with this award, they are ordered to submit a declaration within ten days demonstrating, in detail, their positions on the proper calculation of prejudgment interest.

## III.    Costs and Fees

Finally, Mr. Flosdorf's counsel requests $22,578.25 in fees for 79.85 hours of work and $708.08 in costs expended on this matter. (Pl.'s Decl. at 6; Pl.'s Decl., Ex. 1 (Hours Log).) Reliance Standard does not contest these fees and costs. The Court will therefore award $22,578.25 in fees and $708.08 in costs.

## IV.    Conclusion

Accordingly, based on the submissions and the entire file and proceedings herein,

**IT IS HEREBY ORDERED** that:

1.  The Court awards Mr. Flosdorf $88,865.32 in disability benefits and $6,030.61 in prejudgment interest, for a total award of $94,895.93;

2.  The Court **REMANDS** this case back to Reliance Standard for determination of Mr. Flosdorf's entitlement to benefits under the "Any Occupation" standard of the Policy;

3.  The Court awards Mr. Flosdorf $22,578.08 in fees and $708.08 in costs; and

4.  If the parties disagree with the Court's prejudgment interest award, they shall submit a declaration within ten (10) days demonstrating, in detail, their positions on the proper calculation of prejudgment interest.

Dated: July 18, 2023                                s/ Susan Richard Nelson
                                                    SUSAN RICHARD NELSON
                                                    United States District Judge